**In re David A. FAILLA and Donna N. Failla, Debtor(s).**

**No. 11–34324–BKC–PGH.**

United States District Court,
S.D. Florida,
West Palm Beach Division.

Signed Dec. 19, 2014.

Michael E. Zapin, Boca Raton, FL, for Debtors.

## ORDER GRANTING CITIBANK'S AMENDED MOTION TO COMPEL DEBTORS TO SURRENDER REAL PROPERTY PURSUANT TO STATEMENT OF INTENTION

PAUL G. HYMAN, JR., Chief Judge.

**THIS MATTER** came before the Court for upon the *Amended Motion to Compel Debtors to Surrender Real Property Pursuant to Statement of Intention and Incorporated Memorandum of Law* (the "Motion to Compel Surrender") (ECF No. 40) filed by CitiBank, N.A. as Trustee for the Certificate Holders of Structured Asset Mortgage Investments II Inc., Bear Stearns Alt–A Trust, Mortgage Pass–Through Certificate Series 2006–7 ("CitiBank") against David A. Failla and Donna N. Failla (the "Debtors"). The Court took the matter under advisement at a hearing on October 7, 2014. Thereafter, the parties submitted a *Stipulation of Facts and Statement of Legal Issues for Ruling on Motion to Compel Debtors to Surrender Real Property* (the "J. Stip." or the "Joint Stipulation") (ECF No. 78).[1] For the reasons discussed below, the Court grants CitiBank's Motion to Compel Surrender.

### FACTS

The following facts are undisputed. The Debtors own real property located at 1498 SW 19th Street, Boca Raton, Florida 33486 (the "Property"). J. Stip. at ¶ 3. On August 25, 2006, David A. Failla obtained a loan (the "Loan") from HomeBanc Mortgage Corporation, and in connection therewith executed a promissory note (the "Note") payable to HomeBanc Mortgage Corporation in the principal amount of $500,000.00. *Id.* at ¶ 4. As security for the Loan, the Debtors executed a mortgage (the "Mortgage") on August 25, 2006, pledging the Property as collateral. *Id.* at ¶ 5. The Mortgage was recorded on September 12, 2006, in Official Records Book 20836, Page 0544 et al. of the Official Records of Palm Beach County, Florida. *Id.* at ¶ 6.[2]

Subsequently, the Debtors defaulted under the Note and Mortgage. *Id.* at ¶ 7. On July 7, 2009, CitiBank filed a complaint to foreclose the Mortgage and re-establish the Note in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm

---

1. On December 5, 2014, the Debtors filed their *Brief in Opposition to Creditor CitiBank B.A., As Trustee, Etc. Motion to Compel Surrender of Real Property* (ECF No. 81) and CitiBank filed its *Memorandum of Law in Support of Motion to Compel Surrender of Real Property* (ECF No. 82). Thereafter, on December 12, 2014, the Debtors filed their *Reply Law Memorandum* (ECF No. 84) and CitiBank filed its *Reply to Debtors' Brief in Opposition to Motion to Compel Surrender of Real Property* (ECF No. 85).

2. The parties attached copies of the Note and Mortgage to the Joint Stipulation as Exhibit A.

Beach County, Florida (the "State Court"). *Id.*

Thereafter, on August 31, 2011, the Debtors filed their *Chapter 7 Voluntary Petition* (ECF No. 1). On the same day, the Debtors filed their Schedules A through J (the "Schedules"), in which the Debtors made declarations concerning the Property and the Mortgage under penalty of perjury. The Debtors stated that they own the Property, the Property is encumbered by the Mortgage, and the Mortgage is a valid first mortgage lien on the Property and represents a non-contingent, liquidated, and undisputed secured claim against the Debtors and the Property. The Debtors declared that the amount they owe pursuant to the Loan exceeds the value of the Property. On September 2, 2011, the Debtors filed their *Statement of Intention* (ECF No. 8), in which they declared under penalty of perjury their intention to surrender the Property pursuant to 11 U.S.C. § 521(a)(2)(A). Nevertheless, on October 14, 2011, the Debtors attempted to amend their Statement of Intention to instead declare an intention to reaffirm the Mortgage and Loan. *See Amended Document* (ECF No. 14). The amendment, however, was untimely and invalid under applicable law, and therefore, did not result in the amendment of the original Statement of Intention. J. Stip. at ¶ 15.

On December 16, 2011, the Court issued the *Order Discharging Debtor(s)* (ECF No. 23) and on December 19, 2011, the Clerk of the Court closed the Debtors' case. *See Final Decree and Discharge of Trustee* (ECF No. 25). Subsequently, the State Court set a non-jury trial for August 21, 2013, regarding the Property. J. Stip. at ¶ 17. As of December 1, 2014, and since September 2, 2011, the Debtors have retained possession and title to the Property, and oppose CitiBank's action to foreclose on the Mortgage in the State Court. *Id.* at ¶ 18.

## CONCLUSIONS OF LAW

### I. Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. §§ 157(a)(2)(A) and (O).

### II. The Debtors Must Surrender the Property

The parties agree that there are no factual disputes for the Court to determine in ruling on the Motion to Compel Surrender, and that the only issues left to decide are the following purely legal issues: (1) What actions or inactions, if any, are required of the Debtors to effectively and sufficiently perform their Statement of Intention to surrender the Property?; (2) What remedies or rights are available to CitiBank for the Debtors' failure to comply with their obligation to perform their Statement of Intention to surrender the Property?; and (3) Does the "exception" language of 11 USC § 521(a)(2)(B)—which states that "except that nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title, except as provided in section 362(h)"—implicitly permit a debtor to lawfully defend a foreclosure action as a matter of "right" of such property ownership?

■ When a debtor files for bankruptcy, the debtor must state her intention to surrender, reaffirm, or redeem property in which a creditor has a secured interest. The Bankruptcy Code provides:

(a) The debtor shall—

. . .

(2) if an individual debtor's schedule of assets and liabilities includes debts

which are secured by property of the estate—

(A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property; and

(B) within 30 days after the first date set for the meeting of creditors under section 341(a), or within such additional time as the court, for cause, within such 30–day period fixes, perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; except that nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title, except as provided in section 362(h).

11 U.S.C. § 521.

■ "In many jurisdictions, including the Eleventh Circuit, if the debtor chooses to retain nonexempt collateral under § 521(a)(2), he only has two options: reaffirmation or redemption." *In re Plummer*, 513 B.R. 135, 141 (Bankr.M.D.Fla. 2014) (*citing Taylor v. AGE Fed. Credit Union (In re Taylor)*, 3 F.3d 1512 (11th Cir.1993)). Judge Jennemann of the Bankruptcy Court for the Middle District of Florida elaborated:

He may "reaffirm" his agreement with the secured creditor to pay the prepetition debt, or "redeem" the collateral by paying the allowed secured claim amount in full. But, "[w]here the debtor decides not to reaffirm, or the parties cannot negotiate a reaffirmation, or redemption is not economically feasible, the debtor has but one option: 'surrender' the collateral."

*Id.* (*quoting In re Pratt*, 462 F.3d 14, 19 (1st Cir.2006)); *see also In re Steinberg*, 447 B.R. 355, 357 (Bankr.S.D.Fla.2011) ("In this circuit, a chapter 7 debtor has only three options with respect to property subject to a lien or mortgage: (1) surrender the property; (2) redeem the property; or (3) reaffirm the debt."). The Debtors agreed in the Stipulation of Facts that their proposed amendment to the Statement of Intention was ineffective and that they are obligated to surrender the Property. Accordingly, the issue before the Court is what the Debtors need to do in order to effectively surrender the Property pursuant to the Bankruptcy Code.

■ "Surrender," however, is not defined in 11 U.S.C. § 521(a)(2) or elsewhere in the Bankruptcy Code. *In re Plummer*, 513 B.R. at 142 (*citing In re Pratt*, 462 F.3d at 18 (1st Cir.2006); *In re Cornejo*, 342 B.R. 834, 836 (Bankr.M.D.Fla.2005)). " 'Where the words in the statute are not defined terms, the court should look to their ordinary, dictionary-defined meaning.' " *Id.* (*quoting In re Ralston*, 400 B.R. 854, 860 (Bankr.M.D.Fla.2009) (*citing Consolidated Bank, N.A. v. U.S. Dep't of the Treasury*, 118 F.3d 1461, 1464 (11th Cir. 1997) ("In the absence of a statutory definition of a term, we look to the common usage of words for their meaning."))). Black's Law Dictionary defines "surrender" as "[t]he act of yielding to another's power or control" or "[t]he giving up of a right or claim." *Black's Law Dictionary* 1581 (9th ed. 2009).

Furthermore, "[f]ew courts have examined 'surrender' in the context of

§ 521(a)(2)." *In re Plummer,* 513 B.R. at 142. Sections 521(a)(1) and (2) of the Bankruptcy Code do not state to whom a secured property should be surrendered. The Bankruptcy Court for the District of Columbia, in a case cited by the Debtors, noted that "[m]ost courts appear to assume that the surrender option entails a surrender to the lienholder, not to the trustee...." *In re Kasper,* 309 B.R. 82, 85–86 (Bankr.D.D.C.2004). Likewise, the Eleventh Circuit Court of Appeals stated in dicta that "[s]urrender provides that a debtor surrender the collateral to the lienholder who then disposes of it pursuant to the requirements of state law." *In re Taylor,* 3 F.3d at 1514.[3] Additionally, the First Circuit Court of Appeals, in *In re Pratt,* stated that "the most sensible connotation of 'surrender' ... is that the debtor agreed to make the collateral available to the secured creditor-viz., to cede his possessory rights in the collateral." 462 F.3d at 18.

The Debtors, however, contend that they already surrendered the Property to the Trustee, Michael Bakst. The Debtors contend that the Trustee abandoned the Property and thus that it reverted back to them because they were restored to their pre-petition rights. The Debtors cite *In re Kasper* for the proposition that "surrender" should be to the Trustee. The *Kasper* court stated:

Viewed in isolation, the term "surrender" in § 521(2)(A) is at best ambiguous. However, when § 521(2)(A) is read in the context of its companion provision, § 521(4), which requires that the debtor shall "surrender to the trustee all property of the estate," and of the lack of a clear congressional intention to alter nonbankruptcy law, § 521(2)(A)'s use of the term "surrender" plainly was not intended to mean turning over physical possession to the lienholder.

*In re Kasper,* 309 B.R. at 90.[4]

In contrast, CitiBank contends that it would be unfair to permit the Debtors to retain the Property for longer, if not permanently, while the Debtors contest the foreclosure action in the State Court. The Eleventh Circuit Court of Appeals stated:

We recognize Congress intended the bankruptcy laws to provide a debtor a "fresh start" by allowing a debtor to discharge all dischargeable debts while retaining assets that are exempt. *See* 11 U.S.C. §§ 727 and 522, respectively. Allowing a debtor to retain property without reaffirming or redeeming gives the debtor not a "fresh start" but a "head start" since the debtor effectively converts his secured obligation from recourse to nonrecourse with no downside risk for failing to maintain or insure the lender's collateral. Section 521 mandates that a debtor who intends to retain

---

**3.** Nonetheless, as the Bankruptcy Court for the Middle District of Florida observed, "[t]he footnote in *Taylor* notes debtor has the option to surrender but does not define the term surrender." *In re Cornejo,* 342 B.R. at 836. "Consequently, the Eleventh Circuit's dictum in *Taylor* provides little guidance." *In re Plummer,* 513 B.R. at 141–42 (*citing Edwards v. Prime, Inc.,* 602 F.3d 1276, 1298 (11th Cir.2010) ("[D]icta is not binding on anyone for any purpose.")).

**4.** The Eleventh Circuit Court of Appeals, however, seemingly does not agree with the *Kasper* court's interpretation that the Code is ambiguous. "The Eleventh Circuit holds that a debtor must comply with 11 U.S.C. § 521(2) because the statutory language is unambiguous and to be read literally and narrowly." *In re Jones,* 261 B.R. 479, 485–86 (Bankr. N.D.Ala.2001) (*citing In re Taylor,* 3 F.3d 1512, 1516–17 (11th Cir.1993)). "In *Taylor,* the Circuit Court specifically found that the statutory duties placed upon debtors are mandatory." *Id.*

secured property must specify an intention to redeem or reaffirm.

*In re Taylor,* 3 F.3d at 1516. Accordingly, as noted by Judge Kimball, "[u]nder *Taylor,* a debtor unwilling to reaffirm and unable to pay off the mortgage obligation is required to indicate an intent to surrender the home and to tender the property to the mortgagee." *In re Steinberg,* 447 B.R. at 358. Therefore, the Eleventh Circuit Court of Appeals seems to have rejected, at least in part, the approach taken by the Bankruptcy Court for the District of Columbia in *Kasper.* Essentially, if the Court determined that the Debtors already properly surrendered the Property to the Trustee, they would be effectively permitted to retain the Property, at least until a successful foreclosure action concludes, without redeeming the Property or reaffirming the Note. Furthermore, 11 U.S.C. § 521(a)(2) does not explicitly require the Debtors to surrender the Property "to the Trustee."

Both Judge Kimball and Judge Williamson in the neighboring Bankruptcy Court for the Middle District of Florida utilized the same approach in finding that a debtor may not state an intention to surrender while also contesting foreclosure in a state court. *See In re Cheryl L. Troutt,* Case No. 13–39869–BKC–EPK and *In re Luther Burnett, Jr.,* Case No. 13–12274–BKC–MGW. Judge Kimball, summarizing Judge Williamson's position in *Burnett,* stated:

> [Judge Williamson's] thought is that if the debtor files a bankruptcy case, and takes action in the case that shows an intent to surrender the property, that recognizes the lien and its validity, and gets an advantage through doing that, and then obtains a discharge, but the truth is that the debtor had no intention of giving up the property, and has filed the case in part for strategic reasons,

that a discharge was obtained through fraud and should be revoked. And gives the debtor the chance to do the right thing, or have the Court reach the fairly obvious conclusion that discharge should be revoked. And that's why he entered that order.

*In re Cheryl L. Troutt,* Case No. 13–39869–BKC–EPK at ECF No. 31, Tr. p. 7, lines 214.

Likewise, the same issues of fairness considered by Judge Williamson in *Burnett* were also considered by Judge Kimball in *Troutt.* Judge Kimball summarized the case before him:

> This is a case where the debtor was actively resisting a foreclosure action at the time that the petition was filed, and the petition was filed in December of 2013. The schedules filed in the case show that there was no equity in the property, and the debtor filed a statement of intention indicating a desire to surrender the subject property. The debtor, as a result, had the benefit of the additional wild card exemption under Florida Statute as it's implemented through the Bankruptcy Code and took advantage of the whole thing, thereby getting another $4,000 of exempt property, personal property.

*Id.* at Tr. p. 11, lines 14–25.

In *Troutt,* Judge Kimball reviewed the positions of other courts when faced with a similar set of facts in which a debtor has stated his intention to surrender a property:

> I think there are only two views, two views that I've seen and heard from other bankruptcy judges. One is that the debtor must take affirmative action to actually turn over the property. Lenders may not actually want that, by the way. And the other is, that the debtor cannot take action to impede the lawful course that would normally be

pursued in State Court or elsewhere by the secured creditor.

*Id.* at Tr. at p. 12; lines 18–25. He then determined "that what surrender means is the debtor doesn't have to take affirmative action to physically deliver property to a lien holder, but the debtor cannot impede a creditor's efforts to take possession of its collateral by available legal means." *Id.* at Tr. p. 13, lines 13–17.[5] He elaborated:

> In this case the debtor admitted the validity of the debt and the mortgage, did not claim the property as exempt, and in fact, used the wild card exemption, thereby denying the estate administrable assets, all while having no intention of actually giving up the real property. If the debtor persists in refusing to surrender the property then the only conclusion the Court could reach is that the debtor obtained the discharge based on fraud, and so the discharge should be revoked. Even if this wasn't—even if the standard did not apply here, I would still rule that it's appropriate for the Court to threaten to revoke the discharge for the debtor's failure to live up to the statement of intentions and the duty under Section 521.
>
> . . .
>
> And so it's my view that it's proper for the Court to rule that failure to surrender will result in revocation of discharge.

*Id.* at Tr. p. 13, line 25; p. 14, lines 1–16; p. 15, lines 5–7.

Here, the facts are remarkably similar to those in *Troutt*. The Debtors have admitted the validity of the debt, did not claim the Property as exempt, and have benefitted from the "wildcard" exemption pursuant to Fla. Stat. § 222.25(4). Nevertheless, they wish to utilize affirmative defenses in the State Court and to contest the foreclosure. Moreover, they have not reaffirmed the Note or redeemed the Property. Accordingly, the Court agrees with the approach taken by Judge Kimball and Judge Williamson and determines that the Debtors must surrender the Property to CitiBank.

■ While the Debtors do not have to physically surrender the Property to CitiBank, they cannot continue to defend and/or contest the foreclosure in the State Court which is in effect resisting the surrender of the Property to CitiBank. The Debtors do not have an absolute "right" to defend in a foreclosure action because the Debtors explicitly admitted the validity of the debt and stated their intention before this Court to surrender the Property. The Bankruptcy Code provides:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to

---

5. Judge Jennemann also took this approach in *In re Plummer*, she stated:

> Although we know what surrender does not require—turnover of physical possession—the definition of "surrender" in § 521(a)(2) is still murky. The common element appears to require a debtor to relinquish his rights in the collateral. When a debtor states his intent to surrender collateral under § 521(a)(2)(A), he complies with that intention, for purposes of § 521(a)(2)(B), when he allows the secured creditor (or in rare cases the Chapter 7 trustee) to obtain

possession by available legal means without interference. The debtor is not required to take any affirmative action to physically deliver the property. But the debtor cannot impede the creditor's efforts to take possession of its collateral by available legal means. If the debtor fails comply with his intention, courts have employed a variety of remedies, such as relief from stay, motions to compel compliance, and dismissal of the case under § 707(a).

*In re Plummer*, 513 B.R. at 143–44.

preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105. Consequently, if the Debtors persist in their refusal to "surrender" the Property pursuant to 11 U.S.C. § 521(a)(2), their discharge will be in jeopardy pursuant to 11 U.S.C. § 105. The Debtors' refusal to effectively surrender the Property to CitiBank could be considered not only a fraud on the Court, but also a violation of 11 U.S.C. § 521(a)(2)(B), which requires that "within 30 days after the first date set for the meeting of creditors under section 341(a), or within such additional time as the court, for cause, within such 30–day period fixes, perform his intention with respect to such property."

### III. Conclusion

For the reasons described above, the Debtors' active defense of the foreclosure action in the State Court does not comport with the definition of "surrender" for purposes of the Bankruptcy Code. Therefore, the Debtors are not permitted to defend or oppose the foreclosure and/or sale of the Property in the State Court because they swore under oath in this Court that they intended to surrender the Property and benefited from this declaration.

### ORDER

The Court, being fully advised in the premises and for the reasons discussed above, hereby **ORDERS AND ADJUDGES** that:

1. CitiBank's Motion to Compel Surrender is GRANTED to the extent set forth herein.

2. The Debtors shall cease all defense and/or opposition related to the foreclosure and/or sale of the Property in the State Court.

3. If the Debtors fail to abide by Paragraph 2 of this Order, CitiBank may file a motion with the Court requesting that the Court enter an order vacating the Debtors' discharge.

4. If CitiBank files a motion pursuant to Paragraph 2 of this Order and the Court finds that the Debtor failed to abide by Paragraph 2 of this Order, the Court may enter an order vacating the Debtors' discharge.

5. The Court reserves jurisdiction to enforce the provisions of this Order.

**ORDERED.**