**IN RE: Cecelia Ann GUERRA, Debtor.**

**Case No. 8:11–bk–15663–MGW**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Signed January 28, 2016

Stanley J. Galewski, Esq., Galewski Law Group, P.A., Counsel for Debtor

Florence T. Barner, Esq., Eric R. Schwartz, Esq., Weitz & Schwartz, P.A., Counsel for Deutsche Bank

## *MEMORANDUM OPINION AND ORDER ON DEUTSCHE BANK'S MOTION TO REOPEN BANKRUPTCY CASE AND COMPEL SURRENDER*

Michael G. Williamson, Chief United States Bankruptcy Judge

When the Debtor filed this case, she indicated an intent to surrender her home

to her secured creditor. Three years later, the Debtor actively defended the creditor's foreclosure action and succeeded in getting the case dismissed. This Court must now decide whether it should reopen this case and revoke the Debtor's discharge—or compel her to withdraw her defense of the secured creditor's foreclosure action—based on her statement of intention.

Under the facts of this case, the Court declines to reopen this case and grant the relief the secured creditor seeks. The secured creditor is correct that the Court can revoke a debtor's discharge or compel a debtor to withdraw her defense to a state court foreclosure for perpetrating a fraud on the Court. But given the lapse in time between the time the Debtor obtained her discharge and the time she opposed the secured creditor's foreclosure action, the Court cannot conclude the Debtor never intended to surrender her home. The Court concludes it should be left to the state court to determine whether the Debtor, based on her contradictory positions, is judicially estopped from defending the state court foreclosure action. Accordingly, the Court will deny the secured creditor's motion to reopen this case.

## BACKGROUND

The Debtor owns real property located at 402 13th Street NE, Ruskin, Florida.[1] That property was encumbered by a mortgage in favor of BAC Home Loans. When the Debtor filed for chapter 7 bankruptcy in 2011, she listed the property on Schedule A and the debt owed to BAC Home Loans on Schedule D.[2] In her Statement of Intentions, the Debtor indicated that she would be surrendering the property to BAC Home Loans.[3]

On December 6, 2011, the Debtor received her chapter 7 discharge.[4] Two-and-a-half years later, Deutsche Bank (BAC Home Loans' successor-in-interest) sued to foreclose its mortgage on the Debtor's property.[5] The Debtor opposed the foreclosure action by filing various defensive motions and was ultimately able to get it dismissed on summary judgment.[6] Now the Debtor is seeking fees and costs against the Bank in the foreclosure action.[7] The Bank says that the Debtor's efforts—successful as it turns out—to oppose its foreclosure action after she has received her chapter 7 discharge is contrary to her stated intent to surrender the property.

So the Bank now asks the Court to reopen this bankruptcy case and revoke the Debtor's discharge.[8] According to the Bank, the Court may vacate a debtor's discharge if it was obtained through a fraud on the court.[9] Here, the Bank contends the debtor's discharge was entered based, in part, on her intent to surrender her property. By opposing the Bank's state court foreclosure action, the Debtor, in the Bank's view, effectively violated her oath to—and perpetrated a fraud on—this Court.

## CONCLUSIONS OF LAW

This Court addressed a similar issue in *In re Metzler*, where the Court consolidat-

1. Doc. No. 1 at Schedule A.

2. *Id.* at Schedules A & D.

3. *Id.* at Statement of Intentions.

4. Doc. No. 14.

5. Doc. No. 18 at ¶ 5.

6. *Id.* at ¶ 8.

7. *Id.*

8. *Id.; see also* Doc. No. 23.

9. Doc. No. 18 at ¶ 10.

ed two cases (one a chapter 7 and the other a chapter 13) to consider how a debtor surrenders real property in bankruptcy.[10] There, like here, the debtors contested state court foreclosure actions after indicating in their statements of intention that they would be surrendering their homes.[11] This Court observed that "surrender" must mean something.[12] The Court concluded that the term, in the context of §§ 521 and 1325, "means that a debtor must relinquish secured property and make it available to the secured creditor by refraining from taking any overt act that impedes a secured creditor's ability to foreclose its interest in secured property."[13] Because the debtors in *Metzler* had taken overt acts to oppose state court foreclosure actions pending at the same time the debtors were actively prosecuting their cases in this Court, the Court determined the debtors had failed to "surrender" their property within the meaning of §§ 521 and 1325. The Court required the debtors in *Metzler* to advise the state court they no longer opposed the foreclosure or withdraw any paper that opposed it.

At first glance, the Court's decision in *Metzler* would appear to dictate the outcome here. After all, in this case and in *Metzler*, the debtors have taken overt acts to impede a secured creditor's ability to foreclose its interest in property after indicating an intent to surrender it. And in *Metzler*, the Court granted the precise alternative relief the Bank seeks here—i.e., require the Debtor to stop opposing the state court foreclosure. The Bank's other request for relief is for the Court to revoke the Debtor's discharge. *Metzler*, however,

is distinguishable from this case in one crucial respect.

In *Metzler*, the efforts to impede the state court foreclosure took place immediately or soon after the debtors received their chapter 7 discharge or the Court confirmed their chapter 13 plan. In fact, foreclosure actions had been filed against both debtors in *Metzler* before they sought bankruptcy relief. And the efforts to oppose summary judgment took place within two months in the case of one debtor and nine months in the case of the other. What went unstated in *Metzler*, but was the rationale behind the Court's decision, was that the short time between the time the debtors received the relief they sought in bankruptcy, on the one hand, and opposed foreclosure contrary to their statement of intentions, on the other hand, led the Court to infer the debtors had no intention of surrendering their property—i.e., they had misled this Court.

The same is not true here. For one thing, the Bank did not even file its foreclosure action until more than two years after the Debtor received her discharge. The record is unclear why the Bank waited so long to foreclose its mortgage. But what is clear is that it was not until nearly three years after she received her chapter 7 discharge that the Debtor first took some affirmative action to impede the Bank's foreclosure efforts. And then the Bank waited another year before seeking to reopen this case. Judge Olson confronted similar facts in *In re Kourogenis*.[14]

In *Kourogenis*, the lender waited more than five years after the debtor received her discharge and her case was closed before it sought to reopen her case and

---

10. *In re Metzler*, 530 B.R. 894 (Bankr. M.D.Fla.2015).

11. *Id.* at 896–97.

12. *Id.* at 900.

13. *Id.*

14. 539 B.R. 625 (Bankr.S.D.Fla.2015).

obtain an order barring the debtor from contesting its foreclosure action.[15] The basis of the lender's motion in *Kourogenis* was the same as the Bank's motion here— i.e., the debtor had contested a foreclosure action after indicating an intent to surrender her property. It is unclear whether the foreclosure action in *Kourogenis* had been filed before the bankruptcy or how long it was after the debtor received her discharge before she contested the foreclosure action. In any event, Judge Olson concluded that the defense of laches barred the mortgage lender from reopening the case.[16]

While the Court agrees with the outcome in *Kourogenis*, it is not clear laches is the proper grounds here. As Judge Olson points out, "[l]aches is a defense sounding in equity that serves to bar suit by a plaintiff 'whose unexcused delay, if the suit were allowed, would be prejudicial to the defendant.'"[17] Here, the record is unclear why the Bank delayed in seeking to foreclose its mortgage in this case or to seek relief from this case once the Debtor first opposed its foreclosure efforts.[18] Besides, even if the delay was unexcusable, the Court is not convinced, like Judge Olson was in *Kourogenis*, that the Debtor here will be prejudiced by reopening the case for the limited purpose of enforcing the Debtor's stated intention. In this

Court's view, resort to laches is unnecessary.

The concern here is that the Debtor is making a mockery of the legal system by taking inconsistent positions. In an effort to obtain her chapter 7 discharge, the Debtor swears—under the penalty of perjury—an intention to "surrender" her property. In other words, the Debtor is representing to the Court that she will make her property available to the Bank by refraining from taking any overt act that impedes the Bank's ability to foreclose its interest in the property. Yet, once she receives her discharge, the Debtor in fact impedes the Bank's ability to foreclose its mortgage. Courts, however, have a mechanism for dealing with parties taking inconsistent positions.

 Under both federal and state law, the doctrine of judicial estoppel "generally precludes a party from 'asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding.'"[19] As the Supreme Court recognized in *New Hampshire v. Maine*, the purpose of judicial estoppel "is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."[20] The doctrine "prevents parties from 'making a

---

15. *Id.* at 627.

16. *Id.* at 628.

17. *Id.* (quoting *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1283 (11th Cir.2015)).

18. The Court notes it is not unusual for a bank's bankruptcy counsel to be different from its foreclosure counsel. And foreclosure counsel cannot reasonably be expected to conduct a nationwide search to see if its borrower has previously filed for bankruptcy. That is why discharge in bankruptcy is generally an affirmative defense.

19. *In re Digital Comty. Networks, Inc.*, 496 B.R. 243, 249 (Bankr.M.D.Fla.2013) (quoting *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir.2002)); *Carter v. State*, 980 So.2d 473, 484 (Fla.2008) (explaining that "[j]udicial estoppel is an equitable doctrine that is used to prevent litigants from taking totally inconsistent positions in separate judicial, including quasi-judicial, proceedings") (quoting *Blumberg v. USAA Cas. Ins. Co.*, 790 So.2d 1061, 1066 (Fla.2001)).

20. 532 U.S. 742, 749–50, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001).

mockery of justice by inconsistent pleadings' ... and 'playing fast and loose with the courts.'"[21] The question is which court is in the best position to determine whether judicial estoppel applies.

If a debtor, who has indicated an intent to surrender real property, opposes a foreclosure while his or her bankruptcy case is still pending or within a relatively short time afterwards, then the bankruptcy court should be the one to address the issue. In that case, it would appear the debtor is perpetrating a fraud on the bankruptcy court or making a mockery of the bankruptcy system. But if years pass between the time a debtor indicates an intent to surrender and the time the debtor opposes a state court foreclosure, then the issue of judicial estoppel should be decided by the state court, which is in the best position to determine whether the debtor is making a mockery of the foreclosure action by taking a position inconsistent with the one she took in the bankruptcy case.

## CONCLUSION

■ Here, years passed between the time the Debtor swore she would surrender her home and the first time she opposed the state court foreclosure action. Given that intervening lapse of time, the Court cannot conclude the Debtor intended to perpetrate a fraud on this Court or make a mockery of the bankruptcy system. Perhaps circumstances have since changed that would allow the Debtor to make the required mortgage payments.[22] But that does not mean the Debtor should be permitted to take obviously contradictory positions. The decision whether judi-

cial estoppel precludes the Debtor from defending the foreclosure action based on her inconsistent statements should, under the facts of this case, be left to the state court.

Accordingly, it is

**ORDERED** that the Bank's motion to reopen this case[23] is DENIED.

---

**21.** *Blumberg v. USAA Cas. Ins. Co.,* 790 So.2d 1061, 1066 (Fla.2001) (internal citations omitted).

**22.** It is not clear that is the case here since it is undisputed the Debtor has not made any

mortgage payments since 2009, which is troubling to the Court.

