[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-15626

_____

D.C. Docket No. 9:15-cv-80328-KAM,
Bkcy No. 9:11-bkc-34324-PGH

In re:

DAVID A. FAILLA,
DONNA N. FAILLA,

Debtors.

_____

DAVID A. FAILLA and DONNA N. FAILLA,

Plaintiffs - Appellants,

versus

CITIBANK, N.A.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 4, 2016)

Before MARCUS and WILLIAM PRYOR, Circuit Judges, and LAWSON,[*] District Judge.

WILLIAM PRYOR, Circuit Judge:

This appeal requires us to decide whether a person who agrees to "surrender" his house in bankruptcy may oppose a foreclosure action in state court. David and Donna Failla filed for bankruptcy in 2011 and agreed that they would surrender their house to discharge their mortgage debt. But the Faillas continued to oppose a foreclosure proceeding in state court. Citibank then filed a motion to compel surrender in the bankruptcy court and argued that the Faillas had breached their duty to surrender the property. The bankruptcy court granted the motion, and the district court affirmed. Because the word "surrender" in the bankruptcy code, 11 U.S.C. § 521(a)(2), requires that debtors relinquish their right to possess the property, we affirm.

## I. BACKGROUND

David and Donna Failla own a house in Boca Raton, Florida. They financed their purchase with a $500,000 mortgage. The Faillas defaulted on that mortgage in 2009. Citibank, the owner of the mortgage and the promissory note, filed a foreclosure action in a Florida court. The Faillas are opposing that foreclosure action.

---

[*] Honorable Roger H. Lawson, Jr., United States District Judge for the Middle District of Georgia, sitting by designation.

The Faillas filed for bankruptcy in 2011. During the bankruptcy proceedings, the Faillas admitted that they own the house, that the house is collateral for the mortgage, that the mortgage is valid, and that the balance of the mortgage exceeds the value of the house. They also filed a statement of intention, 11 U.S.C. § 521(a)(2), to surrender the house. Because the house had a negative value, the trustee "abandoned" it back to the Faillas, 11 U.S.C. § 554. The Faillas continue to live in the house while they contest the foreclosure action.

Citibank filed a motion to compel surrender in the bankruptcy court. Citibank argued that the Faillas' opposition to the foreclosure action contradicted their statement of intention to surrender the house. The Faillas argued that their opposition to the foreclosure action is not inconsistent with surrendering the house.

The bankruptcy court granted Citibank's motion to compel surrender and ordered the Faillas to stop opposing the foreclosure action. *See In re Failla*, 529 B.R. 786, 793 (Bankr. S.D. Fla. 2014). The bankruptcy court explained that if the Faillas do not comply with its order, it may "enter an order vacating [their] discharge." *Id*. The district court affirmed on appeal. *See Failla v. Citibank, N.A.*, 542 B.R. 606, 612 (S.D. Fla. 2015).

The Faillas now appeal to this Court. After the parties filed their briefs, Citibank filed a motion to strike portions of the Faillas' briefing that were raised for the first time on appeal. The disputed sections argue that the only remedy

3

available to the bankruptcy court was lifting the automatic stay for Citibank, which would allow Citibank to foreclose on the house in the ordinary course. This Court ruled that the motion to strike should be carried with the case.

## II. STANDARD OF REVIEW

"Because the district court functions as an appellate court in reviewing bankruptcy court decisions, this court is the second appellate court to review bankruptcy court cases." *In re Glados, Inc.*, 83 F.3d 1360, 1362 (11th Cir. 1996). We "assess the bankruptcy court's judgment anew, employing the same standard of review the district court itself used." *In re Globe Mfg. Corp.*, 567 F.3d 1291, 1296 (11th Cir. 2009). "Thus, we review the bankruptcy court's factual findings for clear error, and its legal conclusions *de novo*." *Id.*

## III. DISCUSSION

We divide our discussion in two parts. First, we explain that section 521(a)(2) prevents debtors who surrender their property from opposing a foreclosure action in state court. Second, we explain that the bankruptcy court had the authority to order the Faillas to stop opposing their foreclosure action.

*A. Debtors Who Surrender Their Property in Bankruptcy May Not Oppose a Foreclosure Action in State Court.*

Section 521(a)(2) states a bankruptcy debtor's responsibilities when his schedule of assets and liabilities includes mortgaged property:

4

**(a)** The debtor shall . . .

> **(2)** if an individual debtor's schedule of assets and liabilities includes debts which are secured by property of the estate—

>> **(A)** within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property; and

>> **(B)** within 30 days after the first date set for the meeting of creditors under section 341(a), or within such additional time as the court, for cause, within such 30-day period fixes, perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph;

> except that nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title, except as provided in section 362(h).

11 U.S.C. § 521(a)(2). Subsection (A) requires the debtor to file a statement of intention about what he plans to do with the collateral for his debts. *See* Fed. R. Bankr. P. 1007(b)(2). The statement of intention must declare one of four things: the collateral is exempt, the debtor will surrender the collateral, the debtor will redeem the collateral, or the debtor will reaffirm the debt. *See In re Taylor*, 3 F.3d 1512, 1516 (11th Cir. 1993). After the debtor issues his statement of intention, subsection (B) requires him to perform the option he declared. *Id*.

5

The question here is whether the Faillas satisfied their declared intention to surrender their house under section 521(a)(2)(B). To answer that question, we must decide *to whom* debtors must surrender their property and whether surrender requires debtors to acquiesce to a creditor's foreclosure action. The district court and the bankruptcy court correctly concluded that the Faillas violated section 521(a)(2) by opposing Citibank's foreclosure action after filing a statement of intention to surrender their house.

We agree with both the district court and the bankruptcy court that section 521(a)(2) requires debtors who file a statement of intent to surrender to surrender the property both to the trustee and to the creditor. Even if the trustee abandons the property, debtors' duty to surrender the property to the creditor remains. The text and the context of the statute compel this interpretation.

Reading "surrender" to refer only to the trustee of the bankruptcy estate renders section 521(a)(2) superfluous with section 521(a)(4). Under the surplusage canon, no provision "should needlessly be given an interpretation that causes it to duplicate another provision." Antonin Scalia & Bryan A. Garner, *Reading Law* 174 (2012). *See also Inhabitants of Montclair Twp. v. Ramsdell*, 107 U.S. 147, 152 (1883) ("It is the duty of the court to give effect, if possible, to every clause and word of a statute . . . ."). Section 521(a)(4) states that "[t]he debtor shall . . . surrender to the trustee all property of the estate." 11 U.S.C. § 521(a)(4). Because

6

section 521(a)(4) already requires the debtor to surrender all of his property to the trustee so the trustee can decide, for example, whether to liquidate it or abandon it, section 521(a)(2) must refer to some other kind of surrender.

When the bankruptcy code means a debtor must surrender his property either to the creditor or the trustee, it says so. On the one hand, section 1325(a)(5)(C) states that "the debtor surrenders the property securing such claim *to such holder*," which clearly contemplates surrender to a creditor. 11 U.S.C. § 1325(a)(5)(C) (emphasis added). Congress did not use that language here. On the other hand, section 521(a)(4) states that "[t]he debtor shall . . . surrender *to the trustee* all property of the estate," which clearly contemplates surrender to the trustee. *Id.* § 521(a)(4) (emphasis added). Congress did not use that language either.

What Congress *did* say in section 521(a)(2) is "surrender," without specifying to whom the surrender is made. But the lack of an object makes sense because a debtor who decides to surrender his collateral must surrender it to *both* the trustee and the creditor. The debtor first surrenders it to the trustee, *id.* § 521(a)(4), who decides whether to liquidate it, *id.* § 704(a)(1), or abandon it, *id.* § 554. If the trustee abandons it, then the debtor surrenders it to the creditor, *id.* § 521(a)(2).

The word "surrender" in section 521(a)(2) is used with reference to the words "redeem" and "reaffirm," and those words plainly refer to creditors. A

7

debtor "redeems" property by paying the creditor a particular amount, and he "reaffirms" a debt by renegotiating it with the creditor. *See Taylor*, 3 F.3d at 1514 n.2; *see also* 11 U.S.C. §§ 524(c), 722. Because "[c]ontext is a primary determinant of meaning," Scalia & Garner, *supra*, at 167, the word "surrender" likely refers to a relationship with a creditor as well. We said as much in dicta in *Taylor*. *See* 3 F.3d at 1514 n.2 ("Surrender provides that a debtor surrender the collateral *to the lienholder* who then disposes of it pursuant to the requirements of state law." (emphasis added)).

Other provisions of the bankruptcy code that provide a remedy to *creditors* when a debtor violates section 521(a)(2) suggest that the word "surrender" does not refer exclusively to the trustee. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109–8, § 305, 119 Stat. 23, added two sections to the bankruptcy code that provide remedies for creditors with respect to personal property. 11 U.S.C. §§ 362(h), 521(d). Section 362(h) punishes a debtor who violates section 521(a)(2) by lifting the automatic stay which allows the creditor to pursue other remedies against the debtor immediately. 11 U.S.C. § 362(h)(1). Section 362(h) allows the trustee of the bankruptcy estate to override this remedy, but only if the trustee moves the court to "order[] appropriate adequate protection of the creditor's interest." *Id.* § 362(h)(2). And section 521(d)

8

allows a creditor to consider the debtor in default because he declared bankruptcy if the debtor violates section 521(a)(2). *See id.* § 521(d).

That these remedies apply only to personal property is irrelevant. Section 521(a)(2) uses the generic word "property" and draws no distinction between real and personal property. Congress provided additional remedies for creditors secured by personal property, but the contextual clue remains the same. These remedies for creditors reflect an obvious point about section 521(a)(2): it is a provision that affects and protects the rights of creditors.

We also agree with the bankruptcy court and the district court that "surrender" requires debtors to drop their opposition to a foreclosure action. The bankruptcy code does not define the word "surrender," so we give it its "contextually appropriate ordinary meaning." Scalia & Garner, *supra*, at 70; *see also In re Piazza*, 719 F.3d 1253, 1261 (11th Cir. 2013) (applying this canon to the bankruptcy code). One meaning of "surrender" is "to give or deliver up possession of (anything) upon compulsion or demand." *Surrender*, *Webster's New International Dictionary* 2539 (2d ed. 1961); *see also Surrender*, *Oxford English Dictionary* (online ed.) ("To give up (something) out of one's own possession or power into that of another who has or asserts a claim to it.") (all Internet materials as visited Sept. 15, 2016, and available in Clerk of Court's case file). But this meaning is not contextually appropriate. When the bankruptcy code means

9

"physically turn over property," it uses the word "deliver" instead of "surrender." *See, e.g.*, 11 U.S.C. §§ 542(a), 543(b)(1); *see also id.* § 727(d)(2) (using the phrase "deliver or surrender," which suggests they are different). The presumption of consistent usage instructs that "[a] word or phrase is presumed to bear the same meaning throughout a text" and that "a material variation in terms suggests a variation in meaning." Scalia & Garner, *supra*, at 170; s*ee also Russello v. United States*, 464 U.S. 16, 23 (1983).

Another meaning of "surrender" is "[t]he giving up of a right or claim." *Surrender*, *Black's Law Dictionary* (10th ed. 2014); *see also Surrender*, *Webster's New International Dictionary* 2539 ("To give up completely; to resign; relinquish; as, to *surrender* a right, privilege, or advantage."). This meaning describes a legal relationship, as opposed to a physical action, which makes sense in the context of section 521(a)(2)—a provision that describes other legal relationships like "reaffirmation" and "redemption." This definition is in line with existing authorities. *See In re Pratt*, 462 F.3d 14, 18–19 (1st Cir. 2006) ("[T]he most sensible connotation of 'surrender' in the . . . context [of section 521(a)(2)] is that the debtor agreed to make the collateral *available* to the secured creditor—*viz.*, to cede his possessory rights in the collateral . . . ."); *In re White*, 487 F.3d 199, 205 (4th Cir. 2007) ("[T]he word 'surrender' [in section 1325(a)(5)(C)] means the relinquishment of all rights in property, including the possessory right, even if such

10

relinquishment does not always require immediate physical delivery of the property to another."); *In re Plummer*, 513 B.R. 135, 143–44 (Bankr. M.D. Fla. 2014); 8 *Collier on Bankruptcy* § 1325.06[4] (16th ed.) ("Surrender in th[e] context [of section 1325(a)(5)(C)] means simply the relinquishment of any rights in the collateral.").

Because "surrender" means "giving up of a right or claim," debtors who surrender their property can no longer contest a foreclosure action. When the debtors act to preserve their rights to the property "by way of adversarial litigation," they have not "relinquish[ed] . . . all of their legal rights to the property, including the rights to possess and use it." *White*, 487 F.3d at 206 (emphasis omitted). The "retention of property that is legally insulated from collection is inconsistent with surrender." *Id.* at 207. Ordinarily, when debtors surrender property to a creditor, the creditor obtains it immediately and is free to sell it. *Assocs. Commercial Corp. v. Rash*, 520 U.S. 953, 962 (1997). Granted, a creditor must take *some* legal action to recover real property—namely, a foreclosure action. *See* Fla. Stat. Ann. §§ 702.01–702.11. Foreclosure proceedings ensure that debtors do not have to determine unilaterally issues of priority if there are multiple creditors or surplus if the value of the property exceeds the liability. *See Plummer*, 513 B.R. at 144. Debtors who surrender property must get out of the creditor's way. "[I]n order for surrender to mean *anything* in the context of § 521(a)(2), it has

11

to mean that . . . debtor[s] . . . must not contest the efforts of the lienholder to foreclose on the property." *In re Elowitz*, 550 B.R. 603, 607 (Bankr. S.D. Fla. 2016). Otherwise, debtors could obtain a discharge in bankruptcy based, in part, on their sworn statement to surrender and "enjoy possession of the collateral indefinitely while hindering and prolonging the state court process." *Id.* (quoting *In re Metzler*, 530 B.R. 894, 900 (Bankr. M.D. Fla. 2015)).

The hanging paragraph in section 521(a)(2) also does not give the debtor the right to oppose a foreclosure action. The hanging paragraph states that "nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title, except as provided in section 362(h)." 11 U.S.C. § 521(a)(2). The key words for purposes of this dispute are "under this title." The hanging paragraph means that section 521(a)(2) does not affect the debtor's or the trustee's *bankruptcy* rights. Section 521(a)(2) does not affect the trustee's bankruptcy rights because a debtor must first surrender property to the trustee—who liquidates it or abandons it—before surrendering it to the creditor. *See id.* § 521(a)(4). And section 521(a)(2) does not affect the debtor's bankruptcy rights because a creditor is still subject to the automatic stay and cannot foreclose on the property until the trustee decides to abandon it. The hanging paragraph spells out an order of operations. It does not mean that a debtor who

12

declares he will surrender his property can then undo his surrender after the bankruptcy is over and the creditor initiates a foreclosure action.

Concerns about fairness are not in tension with this outcome. During the bankruptcy proceedings, the Faillas declared that they would surrender the property, that the mortgage is valid, and that Citibank has the right to foreclose. Compelling them to stop opposing the foreclosure action requires them to honor that declaration. The Faillas may not say one thing in bankruptcy court and another thing in state court:

> The concern here is that the Debtor is making a mockery of the legal system by taking inconsistent positions. In an effort to obtain her chapter 7 discharge, the Debtor swears—under the penalty of perjury—an intention to "surrender" her property. In other words, the Debtor is representing to the Court that she will make her property available to the Bank by refraining from taking any overt act that impedes the Bank's ability to foreclose its interest in the property. Yet, once she receives her discharge, the Debtor in fact impedes the Bank's ability to foreclose its mortgage.

*In re Guerra*, 544 B.R. 707, 710 (Bankr. M.D. Fla. 2016). In bankruptcy, as in life, a person does not get to have his cake and eat it too.

Section 521(a)(2) requires a debtor to either redeem, reaffirm, or surrender collateral to the creditor. Having chosen to surrender, the debtor must drop his opposition to the creditor's subsequent foreclosure action. Because the Faillas filed a statement of intention to surrender their house, they cannot contest the foreclosure action.

13

*B. The Bankruptcy Court Had the Authority to Order the Faillas to Stop Opposing the State Foreclosure Action.*

For the first time on appeal, the Faillas argue that even if they breached their duty to surrender under section 521(a)(2), the only remedy available to the bankruptcy court was to lift the automatic stay for Citibank, which would allow Citibank to foreclose on the house in the ordinary course. Citibank asked us to strike this portion of the Faillas' briefs in their May 25 motion to strike, which was carried with the case. The Faillas concede that they did not raise this argument below. They ask us to excuse their forfeiture because their argument is an important, unsettled question of law. This argument is not forfeited, but fails on the merits, rendering Citibank's motion to strike moot.

The Faillas' new argument falls within exceptions to the general rule that a circuit court will not consider an issue not raised in the district court. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1332 (11th Cir. 2004) (quoting *Wright v. Hanna Steel Corp.*, 270 F.3d 1336, 1342 (11th Cir. 2001)). It is a "pure question of law" and its "proper resolution is beyond any doubt." *Id*. Moreover, the Faillas' argument is intertwined with their other arguments. For instance, part of the reason the Faillas contend the bankruptcy court cannot order them to stop opposing the foreclosure action is that section 521(a)(2) is merely a "notice statute" that does not affect substantive property rights.

14

On the merits, however, bankruptcy courts are not limited to lifting the automatic stay. Bankruptcy courts have broad powers to remedy violations of the mandatory duties section 521(a)(2) imposes on debtors. *See Taylor*, 3 F.3d at 1516. Section 105(a) states that bankruptcy courts can "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," 11 U.S.C. § 105(a), which includes section 521(a)(2). Bankruptcy judges also have "broad authority . . . to take any action that is necessary or appropriate 'to prevent an abuse of process.'" *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375 (2007) (quoting 11 U.S.C. § 105(a)).  A debtor who promises to surrender property in bankruptcy court and then, once his debts are discharged, breaks that promise by opposing a foreclosure action in state court has abused the bankruptcy process. *See Guerra*, 544 B.R. at 710.

If a bankruptcy court could only lift the automatic stay, then debtors could violate section 521(a)(2) with impunity. The automatic stay is *always* lifted at the end of the bankruptcy proceedings, *see* 2 Bankruptcy Law Manual § 10:7 (5th ed.), so this remedy does nothing to punish debtors who lie to the bankruptcy court about their intent to surrender property. While a creditor may be able to invoke the doctrine of judicial estoppel in state court to force debtors to keep a promise made in bankruptcy court, its availability does not affect the statutory authority of bankruptcy judges to remedy abuses that occur in *their* courts. And there is nothing

15

strange about bankruptcy judges entering orders that command a party to do something in a nonbankruptcy proceeding. Bankruptcy courts "regularly exercise jurisdiction to tell parties what they can or cannot do in a non-bankruptcy forum." *In re Lapeyre*, 544 B.R. 719, 723 (Bankr. S.D. Fla. 2016). Just as the bankruptcy court may "order[] creditors who violate the automatic stay to take corrective action in the non-bankruptcy litigation," the bankruptcy court may "order the Debtors to withdraw their affirmative defenses and dismiss their counterclaim in the Foreclosure Case." *Id.*  The bankruptcy court had the authority to compel the Faillas to fulfill their mandatory duty under section 521(a)(2) not to oppose the foreclosure action in state court.

## IV. CONCLUSION

We **AFFIRM** the order compelling the Faillas to surrender their home to Citibank. We **DENY AS MOOT** the motion to strike.

16