**IN RE Jose U. AYALA and Ana L. Ayala, Debtors.**

**Case No. 6:11–bk–15964–RAC**

United States Bankruptcy Court, M.D. Florida, ORLANDO DIVISION.

Signed April 17, 2017

Beau Bowin, Bowin Law Group, Satellite Beach, FL, for Debtor.

## ORDER DENYING SPACE COAST CREDIT UNION'S MOTION TO REOPEN CHAPTER 7 CASE AND TO COMPEL SURRENDER OF MORTGAGED PROPERTY

Roberta A. Colton, United States Bankruptcy Judge

Space Coast Credit Union ("Space Coast") filed a Motion to Reopen Chapter 7 Case and to Compel Surrender of Mortgage Property (the "Motion"). (Doc. 23). Debtors filed a response (Doc. 31), and oral argument was presented on April 6, 2017.

The issue presented is whether this 2011 case should be reopened to prevent the former debtors from contesting a foreclosure because they "surrendered" the underlying property in their long-closed chapter 7 case. Because the facts here are significantly different from those in *In re Failla*,[1] the request to reopen this case is denied.

### Background

Without the assistance of counsel, Jose and Ana Ayala filed a chapter 7 petition on October 21, 2011.[2] They properly listed their home and the Space Coast mortgage on their bankruptcy schedules. Later, they filed a "Chapter 7 Individual Debtor's Statement of Intentions," declaring that the property would be "surrendered."[3] The Ayalas received a bankruptcy discharge on February 1, 2012.[4]

For more than two and a half years after the bankruptcy case was closed, the Ayalas did nothing to prevent Space Coast from obtaining possession of their home. In fact, the Ayalas assert that they continued making mortgage payments to Space Coast during this time. Space Coast acknowledges that some payments were made and accepted, but the parties continue to dispute whether there was a legal default under the loan, as modified.[5]

Nevertheless, Space Coast filed a foreclosure action on October 16, 2014. Although the Ayalas initially did not contest the foreclosure,[6] they eventually retained counsel to defend, principally on grounds that the loan, as modified, is not in default. The state court handling the foreclosure recently tried the question of whether the Ayalas defaulted, but has yet to issue its ruling.[7]

---

1. *Failla v. Citibank, N.A. (In re Failla)*, 838 F.3d 1170 (11th Cir. 2016).

2. Doc. 1.

3. Doc. 8 (hereafter, "Statement of Intentions").

4. Doc. 19.

5. In its Motion, Space Coast alleges that the Ayalas' are in "default," but is careful not to state when the alleged default occurred. (Doc. 23, ¶ 8).

6. Doc. 23, Ex. H.

7. *Id.*

After the state court trial, and after the Eleventh Circuit's decision in *Failla*, Space Coast moves to reopen the Ayalas' old bankruptcy case to compel the Ayalas to honor their 2011 Statement of Intentions and "surrender" the mortgaged property.[8] Space Coast further requests an order preventing the Ayalas from contesting the foreclosure in any way, including asserting that a default had not occurred.[9] The Ayalas respond that the bankruptcy case should remain closed and the state court permitted to rule on the "default" issue.[10] Alternatively, the Ayalas request leave to amend their Statement of Intentions to change the "surrender" designation that they made without the assistance of counsel.[11]

## Analysis

■ Once closed, a "case may be reopened ... to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b).[12] "[O]ther cause" is not defined in the bankruptcy code.[13] Here the articulated "cause" is enforcement of the Ayalas' statement of intent to surrender the property mortgaged to Space Coast, premised on the Eleventh Circuit's recent decision in *Failla*.

■ Whether "other cause" exists to reopen a case is left to the discretion of the bankruptcy court.[14] In making this determination, the court's focus should be on the substance and equitable factors of the individual case.[15]

In *Failla*, the Eleventh Circuit affirmed a bankruptcy court order under section 105(a) of the Bankruptcy Code[16] enjoining the debtors from defending or opposing a foreclosure and sale.[17] The Faillas had "surrendered" their property in their statement of intentions filed pursuant to section 521(a)(2).[18] Nevertheless, during and following their bankruptcy, the Faillas continued to live in the home and fight the foreclosure, even asserting affirmative defenses.[19] There is no suggestion that the Faillas made any post-bankruptcy payments to their lender or that their defenses were based on any post-bankruptcy activities of their lender. In fact, the foreclosure action was filed against the Faillas two years before they filed their chapter 7 petition.[20]

---

8. Doc. 23.

9. *Id.*

10. Doc. 31.

11. *Id.*

12. A motion to reopen may be filed by a party in interest such as Space Coast. Fed. R. Bankr. P. 5010.

13. *In re Shondel*, 950 F.2d 1301, 1304 (7th Cir. 1991).

14. *Id.*; *see also Jester v. Wells Fargo Bank N.A. (In re Jester)*, 656 Fed.Appx. 425, 427–28 (10th Cir. 2016); *Zinchiak v. CIT Small Business Lending Corp. (In re Zinchiak)*, 406 F.3d 214, 223 (3d Cir. 2005); *Curry v. Castillo (In re Castillo)*, 297 F.3d 940, 944 (9th Cir. 2002).

15. *In re Shondel*, 950 F.2d at 1304.

16. 11 U.S.C. §§ 101–1532 ("Code" or "Bankruptcy Code"). Unless otherwise indicated, all sectional references are to the Bankruptcy Code.

17. *In re Failla*, 838 F.3d at 1179.

18. Section 521(a)(2) requires chapter 7 debtors with secured obligations to file a statement of intentions with respect to the "retention or surrender of such property ...." The statement must be filed within 30 days of the chapter 7 petition, and the debtors must perform their intention within 30 days after the first date set for the meeting of creditors under section 341(a).

19. *In re Failla*, 529 B.R. 786, 787–88 (Bankr. S.D. Fla. 2014).

20. *Id.*

■ The Eleventh Circuit made two important rulings. First, by stating their intent to "surrender" the property under section 521(a)(2), the debtors were required to drop any opposition to the pending foreclosure action.[21] Second, the bankruptcy court had the authority under section 105(a) to order the debtors to withdraw their defenses and cease any opposition to the pending state court foreclosure action.[22]

The order affirmed in *Failla* was designed to remedy a perceived abuse of the bankruptcy laws.[23] The Faillas claimed all of the benefits of bankruptcy and yet continued to contest the pending foreclosure on all fronts.[24] Presumably, the Faillas continued to live on the property without making any payments to the lender.

Nothing before the court suggests any such abuse by the Ayalas. When the Ayalas filed their chapter 7 petition, no foreclosure was pending. Indeed, nothing in the record suggests that they were in even in default of the Space Coast loan.[25] Space Coast certainly did not seek relief from the automatic stay in the chapter 7 case or seek to compel surrender of the property while the chapter 7 was open. Without the assistance of counsel, and under the circumstances, it is also unclear whether the Ayalas appreciated the legal significance of their "surrender" designation. But even if they did, they could hardly have foreseen the Eleventh Circuit's decision in *Failla*,

almost five years after signing their Statement of Intentions.

For more than two and a half years after the bankruptcy case was closed, the Ayalas did nothing to prevent Space Coast from foreclosing on the property. To the contrary, they made payments on the mortgage, at least some of which Space Coast admits were accepted. Now, more than five years after the Ayalas stated their intent to "surrender" the property, Space Coast seeks to reopen this case to enforce the "surrender."

So what are the limits of *Failla*, if any? Admittedly, the Eleventh Circuit's opinion includes sweeping language, without any acknowledged limitations. But consider this—after a "surrender" under section 521(a)(2), can a lender accept payments for 30 years and then prevent the debtor from arguing that the note and mortgage were satisfied? Can a lender wait 10 years to foreclose and then prevent the debtor from raising a statute of limitations defense? Does it matter that the "default" at issue here is not an affirmative defense but a component of the lender's burden of proof in the foreclosure? Does *Failla* require a debtor to stand silent if a lender presents a false affidavit to the state court? These issues were explored extensively at oral argument without satisfactory resolution.

In the end, common sense must dictate *Failla's* application to the particular facts of different cases. The Eleventh Circuit dealt with the facts presented to it and

---

21. *In re Failla*, 838 F.3d at 1176.

22. *Id.* at 1179. Section 105(a) provides that the bankruptcy court *"may* issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." *Id.* (emphasis added). The court's discretionary authority under section 105(a) is "broad." *Failla*, 838 F.3d at 1179 (quoting *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007)).

23. *Id.* at 1178–79.

24. *In re Failla*, 529 B.R. at 787–88.

25. On their Statement of Financial Affairs, the Ayalas disclosed a sizeable payment to Space Coast made shortly before the bankruptcy petition was filed. The payment appears to constitute three monthly payments when compared to the Schedule J.

concluded that the bankruptcy court's order remedying the perceived abuse was authorized under section 105(a). *Failla* does not state that similar orders (under the discretionary provision of section 105(a)) are now mandatory. And certainly not all foreclosure defenses after the conclusion of a bankruptcy case reflect abuse of bankruptcy process.[26] *Failla* should not be viewed as *carte blanche* for post-bankruptcy lender misconduct. Instead, each case must be evaluated on its own facts, and careful consideration should be exercised before issuing any order that impacts pending state court proceedings.

Here it is at least arguable that post-bankruptcy conduct by Space Coast may have resulted in a waiver of the Ayalas' 2011 "surrender." Whether such a waiver has actually occurred is not for me decide in a bankruptcy case that has been closed for five years. It is also not for me to prevent the state court from deciding this issue after a trial has already taken place. I simply cannot conclude that the Ayalas' post-bankruptcy conduct evidences the same "abuse of process" illustrated in *Failla*.

### Conclusion

Based on the forgoing analysis, the court finds that the equities do not favor Space Coast and that "cause" does not exist to reopen this case.

Accordingly, it is **ORDERED** that Space Coast's Motion to Reopen Chapter 7 Case and to Compel Surrender of Mortgage Property is **DENIED,** and the re-

maining requests for relief in the Motion are **DENIED** as moot.

Attorney Michael C. Caborn directed to serve a copy of this order on interested parties who are non-CM/ECF users and file a certificate of service within 3 days.

ORDERED.

---

26. In *In re Guerra,* 544 B.R. 707, 711 (Bankr. M.D. Fla. 2016), a case cited favorably in *Failla,* the court actually concluded its analysis as follows:

> Here, years passed between the time the Debtor swore she would surrender her home and the first time she opposed the state court foreclosure action. Given that intervening lapse of time, the Court cannot conclude the Debtor intended to perpe-

> trate a fraud on this Court or make a mockery of the bankruptcy system. Perhaps circumstances have since changed that would allow the Debtor to make the required mortgage payments. ... [W]hether judicial estoppel precludes the Debtor from defending the foreclosure action based on her inconsistent statements should, under the facts of this case, be left to the state court.