# Illinois Official Reports

## Appellate Court

---

### *Bank of New York Mellon v. Rodriguez*, 2020 IL App (2d) 190143

---

| | |
|---|---|
| Appellate Court Caption | THE BANK OF NEW YORK MELLON, f/k/a The Bank of New York, as Trustee for the Certificate Holders of the CWABS, Inc., Asset-Backed Certificates, Series 2005-4, Plaintiff-Appellee, v. FRANCESCA T. RODRIGUEZ, JESSE RODRIGUEZ, and THE VILLAGE OF CAROL STREAM, UNKNOWN OWNERS-TENANTS, and NONRECORD CLAIMANTS, Defendants (Francesca T. Rodriguez and Jesse Rodriguez, Appellants; Carl Duber, Garry Duber, Janet Duber, Rosa DeLaRosa, Erica DeLaRosa, and Community Savings Bank, Respondents-Appellees). |
| District & No. | Second District No. 2-19-0143 |
| Filed | March 30, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 12-CH-1998; the Hon. James D. Orel, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Giovanni Raimondi, of RAI Law, LLC, of Schaumburg, for appellants.<br><br>Punit Kumar Marwaha, of Troutman Sanders LLP, of Chicago, for appellee Bank of New York Mellon. |

Nathan B. Grzegorek and James A. Larson, of Plunkett Cooney, P.C., of Chicago, for appellees Carl Duber, Garry Duber, and Janet Duber.

Panel
JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices Schostok and Brennan concurred in the judgment and opinion.

**OPINION**

¶ 1      In April 2012, plaintiff, the Bank of New York Mellon, formerly known as the Bank of New York, as trustee for the certificate holders of CWABS, Inc., Asset-Backed Certificates, Series 2005-4 (Bank), filed a foreclosure complaint against defendants, Francesca T. and Jesse Rodriguez, concerning a home in Hanover Park. Ultimately, in May 2014, the trial court entered a default judgment against defendants, and the property was sold through a judicial sale.

¶ 2      In July 2018, defendants filed a petition for relief from a void judgment, pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2016)), arguing that all orders entered against them in the foreclosure action were void because they were not properly served and that, therefore, the court had lacked personal jurisdiction over them. The Bank moved to dismiss the petition, pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2016)), arguing that service was proper and that the petition failed to attach a required affidavit. In addition, Carl, Garry, and Janet Duber, joined by Rosa and Erica DeLaRosa and Community Savings Bank (CSB) (collectively, the purchasers), moved to dismiss the petition, pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2016)), arguing, in part, that they were *bona fide* purchasers of the property and that defendants were estopped from seeking relief, on account of their bankruptcy proceeding. The trial court denied the Bank's motion but granted the purchasers' motion and dismissed the section 2-1401 petition on the basis of estoppel, due to defendants' surrender of the property in bankruptcy and the discharge of their debts therein. Defendants appeal. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      As mentioned, the Bank filed the foreclosure complaint in April 2012. In May 2012, defendants filed a Chapter 7 bankruptcy petition, in which they identified the property as one of their assets that they intended to "surrender." On September 18, 2012, the bankruptcy closed, and defendants' debts, including those pertaining to the property, were discharged.

¶ 5      After the bankruptcy closed, on December 12, 2012, a service affidavit was filed in the foreclosure action. Specifically, in an "affidavit of special process server," John P. Valente attested that he was an agent of a licensed private detective agency "appointed by the court to serve process" in this case. According to the affidavit, on December 4, 2012, service of the summons and the foreclosure complaint was effected upon defendants at "5612 S. Oak Park

Ave, Chicago, IL, 60638."[1] The record does *not* contain an order appointing a special process server.

¶ 6 Approximately two weeks later, on December 17, 2012, defendants' attorney from the bankruptcy proceeding filed in the foreclosure action a "suggestion of bankruptcy." The document notified "interested parties" of the existence of the bankruptcy case and attached various documents pertaining to that case. Again, this document was filed in the foreclosure action almost three months after the bankruptcy case *closed*.

¶ 7 The record reflects, without explanation or detail, that the foreclosure action was then continued for approximately two years. It is apparently undisputed that defendants did not seek to redeem or reaffirm the property. Eventually, in April 2014, the Bank moved for a default judgment against defendants and a judgment of foreclosure and sale. On May 16, 2014, the court entered an order of default against defendants and a judgment of foreclosure. The property was sold at a judicial sale, with the Bank being the successful bidder. On October 7, 2014, the foreclosure court entered an order confirming the judicial sale.

¶ 8 In January 2015, the Dubers purchased the residence from the Bank for $130,000. They attested that they had remitted sums for real estate taxes and property insurance and invested approximately $61,500 in home improvements. In September 2015, the DeLaRosas (and their mortgage lender, CSB) purchased the residence from the Dubers for $260,000.

¶ 9 On July 17, 2018, approximately *six years* after they received their bankruptcy discharge, defendants filed a section 2-1401 petition seeking relief from a void judgment. They argued that, where there was no order in the record appointing a special process server, they were improperly served in Cook County, in violation of section 2-202(a) of the Code (735 ILCS 5/2-202(a) (West 2016)), and that the jurisdictional defect affirmatively appeared on the face of the record. Accordingly, they argued that the court lacked personal jurisdiction over them and that the default judgment was void. In their prayer for relief, defendants requested that the court do the following:

–quash the service;

–vacate all orders and judgments in the case as void *ab initio*;

–find that the lack of jurisdiction is apparent on the face of the record;

–find that defendants are the owners of the property;

–restore possession of the property to them and order that the Bank, the Dubers, and the DeLaRosas pay defendants, "as restitution, reasonable use and occupancy of [the property] from October 7, 2014, through and including the date [defendants] are restored to possession." Alternatively, "in the event that possession is not restored" to defendants, the Bank, the Dubers, and the DeLaRosas pay defendants "as restitution" the value of the property on the date that the petition is granted, plus reasonable use

[1]The record reflects that earlier attempts to serve defendants at the property were unsuccessful and that the property was unoccupied and appeared abandoned. For example, on April 28, 2012, *before* defendants filed for bankruptcy, service of process at the property was unsuccessful, and the process server attested that there was no furniture nor any personal belongings in the single-family residence, the home had two broken windows and a broken storm-door window, there were no lights on inside, there was no car in the driveway, there was a vacancy notice posted on the front door and the garage, and defendants' names were not listed on the doorbell or mailbox.

and occupancy of the property from October 7, 2014, through and including the date that restitution is paid in full;

–order the Bank and the purchasers to pay defendants and CSB, "as restitution," all profits that they derived from the property; and

–stay further proceedings until all restitution is made to defendants.

¶ 10 The Bank filed the section 2-615 motion, arguing that defendants' petition lacked a required affidavit and that service was proper. The Dubers, joined by the DeLaRosas and CSB, filed the section 2-619.1 motion, arguing that they were entitled to *bona-fide*-purchaser protections under section 2-1401(e) (735 ILCS 5/2-1401(e) (West 2016)), section 2-1401(e) barred the possessory relief requested by defendants, the *laches* doctrine barred the petition, the bankruptcy proceeding acted to judicially estop defendants from pursuing their petition, and defendants' requested relief was not predicated on the matters asserted in the petition.

¶ 11 On January 24, 2019, after hearing oral argument, the trial court denied the Bank's section 2-615 motion but granted with prejudice the purchasers' motion, pursuant to the section 2-619 judicial-estoppel arguments. At a hearing, the court and defendants' counsel had the following exchange:

"THE COURT: How can you even bring this action when the trustee on the Chapter 7 is the party that was of interest, number one. Number two, your clients gave up their interest. And number three, they are taking a contrary stance now, as you stand here in front of the Court.

\* \* \*

THE COURT: They have surrendered to the trustee the property.

MR. RAIMONDI: For administration. At the point where the trustee did not administer that asset, it returns back to the debtor upon the discharge.

THE COURT: And did they get the property back on discharge?

MR. RAIMONDI: I don't know.

THE COURT: So, how can you bring this action then? If you don't even know—

MR. RAIMONDI: Because—

THE COURT: You just made an admission in open court that you don't know if they even have this property at this point.

MR. RAIMONDI: Obviously, they don't have the property, your Honor."

¶ 12 The court emphasized that defendants filed their bankruptcy petition, vacated and surrendered the property, and received the bankruptcy discharge *before* they received service in the foreclosure action. It found defendants' position in the bankruptcy—surrendering the property—contrary to their section 2-1401 argument that they had an interest in the property, and it dismissed the petition. On February 22, 2019, defendants filed their notice of appeal.

## II. ANALYSIS

¶ 14 Preliminarily, we note that, similar to their postures below, the Bank on appeal filed a response brief, and the Dubers filed a separate response brief, joined by the DeLaRosas and CSB. In addition, the purchasers filed a motion, which we ordered taken with the case, to strike one section of defendants' reply brief. They argue, in sum, that defendants' argument in that section—that the estoppel defense improperly concerns issues of title and the merits of the

- 4 -

underlying foreclosure—was not raised in defendants' opening brief and should therefore be stricken. We reject their argument and deny the motion. We agree with defendants that the argument addressing the propriety of issues raised in a section 2-1401 proceeding simply responded in natural extension to arguments the purchasers and the Bank raised in their briefs.

¶ 15 Turning to defendants' appellate arguments, they contend initially that the trial court erred in dismissing their section 2-1401 petition, pursuant to section 2-619(a)(9) of the Code, based on estoppel principles. Section 2-619(a)(9) of the Code permits dismissal of an action where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2016). We review *de novo* the dismissal of a complaint pursuant to section 2-619(a)(9). *McIntosh v. Walgreens Boots Alliance, Inc.*, 2019 IL 123626, ¶ 17. In addition, we review *de novo* a judgment on a section 2-1401 petition claiming voidness due to lack of personal jurisdiction. *Deutsche Bank National Trust Co. v. Hall-Pilate*, 2011 IL App (1st) 102632, ¶ 12. Moreover, as the trial court's exercise of its discretion in applying the doctrine of estoppel resulted in the termination of litigation, our review of that ruling is *de novo*. See *Seymour v. Collins*, 2015 IL 118432, ¶¶ 48-49.

¶ 16 First, defendants contend that estoppel does not apply to a motion to vacate a void judgment, as voidness may be raised at any time. Second, they argue that the purchasers failed to establish judicial estoppel, because there are no allegations that defendants acted in a manner calculated to make a mockery of the judicial system and, citing *Seymour*, they contend that courts are reluctant to apply judicial estoppel in the context of bankruptcy. Moreover, defendants contend that a statement of intention to surrender property pursuant to section 521(a)(2)(A) of the Bankruptcy Code (11 U.S.C. § 521(a)(2)(A) (2012)) serves only as a notice provision and that "surrender" does not give creditors a free pass to violate state law or violate the rights of debtors. Defendants argue that their election to surrender the property in the bankruptcy proceeding cannot be construed as a waiver of their right to challenge the foreclosure based upon a due process violation. Further, they argue that they should not be divested of their due process rights simply because they cooperated with the bankruptcy court. They concede that, upon surrender, a debtor cannot impede a creditor's efforts to take possession by available legal means, but they contend that securing void orders when a court lacks personal jurisdiction cannot be construed as legal means. Finally, defendants argue that the petition was properly pleaded, service in Cook County required the appointment of a special process server, the defect in service was apparent on the face of the record such that the purchasers were not *bona fide*, the doctrine of *laches* does not apply to petitions to vacate void judgments, and they are entitled to restitution.

¶ 17 We begin with the trial court's basis for dismissal, which addresses defendants' contention that surrendering the property did not act to waive their rights to challenge the foreclosure. Indeed, whether framed as an issue concerning estoppel or even standing, the court essentially questioned whether defendants even had a *right to pursue* the section 2-1401 petition, where they surrendered the property, they received a discharge of the debt, the property became subject to administration by the bankruptcy trustee, and the property apparently did not return to them after the discharge. The court concluded that defendants' position in bankruptcy and the benefit of the discharge effectively served to preclude their pursuit of relief from judgment in the foreclosure. We agree.

¶ 18 While we have no quarrel with defendants' assertion that void judgments may, generally, be attacked at any time, this position presumes that the judgment is being attacked by one with

a valid interest in doing so. The question here is whether the bankruptcy proceeding, in which defendants surrendered the property and received a discharge of their debts—before they received the alleged defective service of the foreclosure complaint—affected their ability to seek relief from the foreclosure judgment. Defendants' arguments, in total, suggest that their positions and the relief they were afforded in bankruptcy were of no legal import with respect to the foreclosure. For the following reasons, we disagree.

¶ 19    Two cases from other jurisdictions, although not precedential, are instructive with respect to the unique facts of this case. First, in *In re Failla*, 838 F.3d 1170 (11th Cir. 2016), the court explained the effect that "surrendering" property has in the context of bankruptcy. There, the court framed the question as "whether a person who agrees to 'surrender' his [(or her)] house in bankruptcy may oppose a foreclosure action in state court." *Id.* at 1173. The court concluded that the word "surrender," although not defined in the Bankruptcy Code, requires that debtors relinquish their rights to possess property such that they may not oppose state foreclosure actions. *Id.* at 1177-78; see also *In re Pratt*, 462 F.3d 14, 18-19 (1st Cir. 2006) ("the most sensible connotation of 'surrender' *** is that the debtor agreed to make the collateral *available* to the secured creditor—*viz.*, to cede his *possessory rights* in the collateral" (emphases in original and added)). Specifically, the court determined that section 521(a)(2) of the Bankruptcy Code requires a debtor to either redeem, reaffirm,[2] or surrender collateral to the trustee *and* creditors; therefore, having chosen to surrender, the debtor must drop opposition to the creditor's foreclosure action. *Failla*, 838 F.3d at 1178. Further:

> "Because 'surrender' means 'giving up of a right or claim,' debtors who surrender their property can no longer contest a foreclosure action. When the debtors act to preserve their rights to the property 'by way of adversarial litigation' they have not 'relinquish[ed] *** all of their legal rights to the property, including the rights to possess and use it.' [Citation.] *** Ordinarily, when debtors surrender property to a creditor, the creditor obtains it immediately and is free to sell it. [Citation.] Granted, a creditor must take some legal action to recover real property—namely, a foreclosure action. [Citation.] Foreclosure proceedings ensure that debtors do not have to determine unilaterally issues of priority if there are multiple creditors or surplus if the value of the property exceeds the liability. [Citation.] Debtors who surrender property must get out of the creditor's way. '[I]n order for surrender to mean anything in the context of § 521(a)(2), it has to mean that *** debtor[s] *** must not contest the efforts of the lienholder to foreclose on the property.' [Citation]. Otherwise, debtors could obtain a discharge in bankruptcy based, in part, on their sworn statement to surrender and 'enjoy possession of the collateral indefinitely while hindering and prolonging the state court process.' [Citations.]" (Emphases omitted.) *Id.* at 1177.

---

[2]The court explained that the word "surrender" in section 521(a)(2) is used with reference to the words "redeem" and "reaffirm," both of which "plainly refer to creditors." *Failla*, 838 F.3d at 1176. It explained that a debtor "redeems" property by paying the creditor a specific amount, while he or she "reaffirms" a debt by renegotiating it with the creditor. *Id.* There appears to be no dispute here that defendants neither redeemed nor reaffirmed the property. Moreover, defendants do not provide this court with any information concerning the trustee's actions with respect to the property after they surrendered it and received the discharge of their debt.

¶ 20    The *Failla* court rejected the argument that defendants raise here, *i.e.*, that section 521(a)(2)'s hanging paragraph—which states that "nothing in *** this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title, except as provided in section 362(h) [(11 U.S.C. § 362(h) (2012))]"—means that a debtor retains the right to oppose a foreclosure action, as it interpreted the relevant sections as referring to *bankruptcy* rights. *Id.* at 1177-78. Finally, the court also noted that concerns about fairness were not implicated by its decision, as dropping opposition to foreclosure merely required the debtors to honor the declaration they made in bankruptcy to surrender the property. *Id.* Noting that the debtors may not say one thing in bankruptcy court and another thing in state court, the court declared, "[i]n bankruptcy, as in life, a person does not get to have his cake and eat it too." *Id.*

¶ 21    Similarly, in *Ibanez v. United States National Ass'n*, 856 F. Supp. 2d 273 (D. Mass. 2012), the court considered the equitable effect of a party purporting to surrender a property in bankruptcy later seeking to claim injury upon an invalid foreclosure of the property. There, a court declared void in 2011 a foreclosure judgment that was entered in 2007 against the homeowner. The homeowner filed a complaint, claiming, in part, that he had been deprived of the use, possession, and value of the mortgaged property. The bank moved for judgment on the pleadings, noting that the homeowner had also, in 2007, filed for Chapter 7 bankruptcy, indicated his intent to surrender the subject property, and received a discharge of that debt. The court granted the motion. Citing cases relating to concepts of judicial estoppel, it noted that the homeowner was "seeking to capitalize in this court on the holding [that the foreclosure was void] by invoking the wrongful foreclosure of the same property that he surrendered in the Bankruptcy Court in exchange for the discharge of his debts. This, equity will not permit." *Id.* at 275. The court found "fatal to his claims in this court" the homeowner's surrender of the property in bankruptcy; "thus, even were there a claim, it does not belong to [the homeowner]." *Id.* at 276. In addition, the court noted that the homeowner was allegedly unlawfully deprived of the property 10 months *after* he had surrendered his interest: "To argue that he was injured by the invalid foreclosure of a property in which he no longer held any legal or equitable interest defies logic." *Id.*

¶ 22    Here, like in *Ibanez*, the allegedly unlawful deprivation occurred *after* defendants surrendered their interest in the property, and therefore, their assertion of injury with respect to the allegedly invalid foreclosure defies logic. We acknowledge that, as defendants point out, *Failla* has not been uniformly followed (see, *e.g.*, *In re Gregory*, 572 B.R. 220, 238-39 (Bankr. W.D. Mo. 2017) (holding, in part, that *Failla*'s reasoning did not apply, in part due to circuit-specific laws, but suggesting that, even if applicable, *Failla* might be incorrect)) and that it did not purport to give creditors *carte blanche* to violate state foreclosure processes. We nevertheless find the case instructive. To the extent that a declaration to surrender property in bankruptcy precludes the debtor's ability to even oppose foreclosure in state court, defendants seemingly had no remaining interest to protect or relief to obtain through their section 2-1401 petition. Indeed, it is abhorrent to our sense of equity that, six years after the bankruptcy, defendants claimed injury and sought to recover a property in which they no longer held any legal or equitable interest. Defendants' petition seeks to unwind a foreclosure action, where there was no actual loss to them; their interest was nullified by virtue of the bankruptcy surrender and the discharge.

¶ 23    Defendants' cited cases do not convince us otherwise. Although defendants argue that stating an intent to surrender property under section 521(a)(2) acts only as a notice provision,

courts have, nevertheless, held that debtors remain bound by the stated intent. See *In re Plummer*, 513 B.R. 135, 142 (Bankr. M.D. Fla. 2014) ("Section 521(a)(2) indeed does serve to notify secured creditors of the debtor's intention as to their collateral, but the statute also requires the debtor then to act consistent with their intentions."); *In re Cornejo*, 342 B.R. 834, 837 (Bankr. M.D. Fla. 2005) ("the [d]ebtor relinquishes its interest in the collateral when an intention to surrender is communicated"). Moreover, although defendants cite *Plummer* for the concept that a debtor complies with the surrender requirement when he or she allows the secured creditor to obtain possession by available "legal" means and they argue that foreclosure without proper service is *not* legal, they omit the full context of *Plummer*'s comments. In that case, the court considered whether "surrender" required the debtor to *physically* turn over possession to the creditor; the court concluded that physical turnover was not required, as that would circumvent the creditor's state law obligations with respect to foreclosure. *Plummer*, 513 B.R. at 143. Accordingly, the court determined that surrender obligations are satisfied when the debtor allows the secured creditor

> "to obtain possession by available legal means [(*i.e.*, foreclosure actions)] *without interference*. The debtor is not required to take any affirmative action to physically deliver the property. But the debtor cannot impede the creditor's efforts to take possession of its collateral by available legal means. If the debtor fails to comply with his intention, courts have employed a variety of remedies, such as *** dismissal of the case ***." (Emphasis added.) *Id.* at 143-44.

Similarly, the court in *In re Theobald*, 218 B.R. 133, 136 (B.A.P. 10th Cir. 1998), noted that "Section 521 was not designed to provide a mechanism by which creditors may avoid obligations imposed by state law," but the court there was considering whether a debtor's "surrender" required that the debtor sign a special warranty deed conveying title to the property to the creditor. The court rejected that interpretation of "surrender," noting that it would create "a host of problems and additional duties not required by the Bankruptcy Code," including putting the debtor in a position to determine to whom the property should be deeded, if more than one lienholder held an interest, and that the creditor would not be required to hold a foreclosure sale. *Theobald*, 218 B.R. at 136. As such, we do not agree with defendants' interpretation that allowing the creditor to pursue possession by "legal means" suggests that an error in that process results in an injury to defendants or revests them with an interest that they had *already surrendered*.

¶ 24    Again, the facts of this case are unique. They reflect that the Bank filed its foreclosure action and, one month later, defendants filed for bankruptcy, having apparently already physically abandoned the property. They declared an intent to surrender the property in their bankruptcy petition, they did in fact surrender the property without reaffirming or redeeming it, and they received discharge in bankruptcy. After the discharge, they received service of process (even if defective) of the foreclosure action, and their bankruptcy attorney shortly thereafter filed in the foreclosure action the suggestion of bankruptcy. Defendants did not take any other action, in the foreclosure case or otherwise, until six years had passed and two subsequent purchases of the property were completed. We agree with the trial court that, given the foregoing authority and the unique circumstances of this case, defendants cannot now seek relief from judgment. Therefore, the court properly dismissed the section 2-1401 petition.

## III. CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.